Please be seated. Thank you. For the record, for the remainder of the cases this afternoon, Justice Harris has been able to be present for the oral argument. If the oral arguments are recorded, you will have full access to the oral arguments this afternoon, as well as, of course, the record and the briefs, as we all do. Prior to the judicial conflict, he was unable to be here present for the oral arguments. But he is a fully participating member of the court and of the panel on each and every case for the remainder of the afternoon. Thank you. I think we lost another one. He'll be right back. He'll be right back. Should we wait? No. No? Okay. We don't need to. You want to wait? We'll wait. I think the players went up to squirt. Very good. Please call the next case. Next case is 5-16-0-4-1-8. So you may proceed. Thank you. May it please the Court, Mr. Regan. My name is Tom Schooley. I'm the attorney for Eleanor Gardner, who is the surviving spouse of the deceased Kenneth Gardner. This is the Appellant's Petitioner's Appeal of Denial of Benefits. Specifically, the commission denied benefits on two bases, accident as well as on causal connection. And the commission decision is on page 27 of the appendix of my brief. With regard to accident, there's been absolutely no explanation whatsoever in the commission decision, hope I don't create a leap at that point, as to why accident was denied. There is no discussion as to arising out of it in the course of deployment. There is no discussion whether or not this was an employment risk, a personal risk, a mutual risk. All the decision states is that the petitioner failed to meet his burden of proof as to either accident or causal connection, but there's no legal basis for the denial of accident. I think there might be one hanging in the record. It seems to me that the commission expressly questioned the veracity of the decedent's testimony. So as to why they would not believe him, did they not find that he had a history of problems involving his low back that caused him to seek treatment, and yet when he went to the doctors, at least when he talked to some of them, he didn't tell them about the history. Isn't that relevant to his credibility? I would state that if you read the commission decision and on page 27 and 28 of the record, whenever that is discussed about him not telling Dr. and specifically talking about Dr. Dirkers, that that all goes towards causal connection. It does not go to accident. Well, if they don't believe him, if they have problems with his credibility in one area, would they not have problems necessarily or perhaps with the other? I would hope that they would specifically state, we do not believe the petitioner testified credibly as to the issue of accident. Because that way then I can come up here and I can argue why or why not his credibility should or should not be an issue with regard to accident. But as it sits now, I don't know specifically on what basis it was. But if we look at the facts, if we look at the record, the only evidence of accident came from the petitioner himself, where he testified he was dispatched by the employer of Buzzfeed to go to Pennsylvania to pick up a load weighing 44,800 pounds. He packs up his trailer, he packs up his tractor to the trailer and he testified there. As he's cranking down on the dolly handle, which supports the dolly, supports the trailer for it to be attached to the tractor, as he's forcibly cranking down, he feels a pop in his back and he has pain. That's the accident and that's the evidence before this record. Again, that's clearly an employment-related risk. And I would submit that with that being the only evidence, that it is clearly supported by the manifest weight of the evidence. I do believe that the evidence in this case does turn on cause of connection. And the commission says that he had a longstanding history of previous low back problems. Is that true? If you look at Dr. DeLisle's records, and that's the only evidence of preexisting, first time he goes to the scene is July 30, 2007. He doesn't go there for low back problems. He goes there to establish with Dr. DeLisle as a primary care physician. And he had some issues, some other unrelated issues, obstructive lung disease, social history, patient drives a truck for a living, review of symptoms, patient also reports having some low back discomfort. This has been going on in the right buttock area over the last three years. Are we talking about Dr. DeLisle? DeLisle, yes. Okay, let me ask you this. On November 28, 2007, several months prior to the plane work accident, did Dr. DeLisle not diagnose moderately severe spinal stenosis and noted that the decedent might require surgery or pain management? Yes. So that's not a serious lower back problem? He says if the symptoms and pain continues, he may make a surgical referral or may refer him to pain management if those symptoms persist. Well, forget about any surgery, pain management, any referrals. He diagnosed a moderately severe spinal stenosis. Yes. And that's nothing? I'm not saying it's nothing, but the record indicates he never lost any work because of this condition. Okay. He also, in April, six weeks before this accident, has his DOT, Department of Transportation, annual physical exam, which included a spinal as well as a neurological exam. Those were normal, and he got his DOT, the triage certificate. But shouldn't he have mentioned this? Now, again, you're talking about Dr. Dirkers. Let's look when he sees Dirkers. Well, did he mention it to any of the other expert witnesses in this case? I think he did mention it to Dr. Fong. Did he mention it to Dr. Soriano? Soriano did a records review. So, I mean, there was no in-person exchange between Soriano and the physician. Did Soriano not also found the decedent gave inconsistent descriptions regarding how the work injury allegedly occurred, which would go to your accident unrebutted? And did he also say the decedent told one physician he had no back problems prior to June 10, 2008. Dr. Soriano felt that these discrepancy gives this physician the impression that the decedent is attempting to portray himself in a condition of ill-being that is solely related to work, whereas the facts of the case indicate otherwise. That's a pretty direct comment on credibility of the decedent, isn't it? If we look at Dr. Dirkers. This was Dr. Soriano I was quoting. Yes, but Dr. Soriano is getting that information from Dr. Dirkers, a review of Dr. Dirkers' records. And what does the petitioner tell Dr. Dirkers on June 12, 2008, two days after? Yes, 68-year-old male who states he never had any back problems. Yes, he does state that. Now, if you go on, he has been working for Buskey for about nine years. Again, this is Dr. Dirkers saying, again, he denies any previous injuries on the job. Okay, to me, that says that when Dirkers puts that in there, he's referring to that first statement up top about, yes, I've never had any back injuries on the job. And that is truthful. I read the two sentences together when I look at that introductory history. The petitioner testified at arbitration he had back problems. He didn't at arbitration say, no, I've never had any back problems. Well, at that point, everything was out. He's not going to get on the stand at arbitration and say he has no back problems when there's medical records to impeach him, is he? Well, I don't coach him to tell the truth, okay, when I prep up a witness. I don't tell him to tell the truth. But if he tells some of the treating doctors he doesn't have back problems when he was diagnosed with moderate severe spinal stenosis, I mean, you can see the conflict there, can't you? I can see the conflict. But let's look at the evidence post-June 10th, because you have a change in the diagnostic workup. You have the MRI in November, and you have the MRI taken three weeks after this accident. That moderate stenosis that was discerned in November goes to severe stenosis after this accident. He first starts missing work after June 10th. Okay, there was never a surgical recommendation prior to June 10th, 2008, nor was there any right foot drop. And Dr. Fahn says, look, the reason I operated on an emergency basis right at a month after the accident was because of the right foot drop. Let me get to the point. I think this case, we can objectively concede, sort of boils down to the setting aside the credibility issue, it's sort of a battle of the experts. Is it not? You've got Fahn. Is it Whitecheck? Obviously concluding that the claimant's pre-existing degenerative disease was aggravated. So you've got those doctors on your side. But you've got Durker, Soriano, and Ruth, excuse me, concluded the claimant's condition of LB was simply due to a natural progression of the pre-existing degenerative disease. So you've got three physicians on the other side contesting that. But they give something in this case we don't always see. The commission gives reasons when they weigh the conflicting evidence. They said the commission explained they attributed less weight to the opinion of Dr. Fahn because his testimony was evasive, particularly on cross-examination. So they gave a specific reason for questioning that credibility. They also discounted the testimony of Dr. Whitecheck on the basis he is a general orthopedic surgeon who has not actively practiced medicine since 2008. So you've got conflicting expert opinions, and the commission gives a couple of reasons why they gave less weight to testimony of the claimant's physician. So what's wrong with that? And I get the manifest weight. Right. And again, I think I heard that, the swimming upstream argument. However, like was mentioned in the first argument today, opinions are only good as a basis upon which they're based. Soriano, Durkers did not have any evidence, a lot of the evidence, to fore him of other medical records or reports. He was basing it solely on this thing. He never had any problems. Once he heard that, boom, he was, I'm not for you, he lied to me. But he took that approach. Soriano did not realize or was not informed that he had not missed any work before June 10, 2008 due to any back problem. And then he got the right foot drop. Okay. He had right foot drop developed within two to three days after this June 10 accident. So, I mean, I think those opinions should be discounted because those doctors aren't provided with the full basis. Now, whenever we go to Dr. Rutz, Rutz agrees on cross-examination. Yes, there is a difference in the diagnostic work of the MRI in November of 7 and the MRI in June of 8. It went from moderate to severe. And the stenosis is more prominent after the June 10 incident. So you've done a good job of articulating why you believe that the testimony of the respondent's expert should be discounted, although on the other side the commission ended up believing them. And yet now you have the commission, as I pointed to, pointing out specific reasons why they rejected Farn and Weissach. So how do you then, how is an opposite conclusion then clearly apparent? And I cite in my case that this situation is analogous to an intervening accident case. Okay. Let's assume that I had a work accident in November of 08. And then we had this June 10 incident where we had the change in the diagnostic workup. We had him losing time from work. We had a surgical recommendation. We had symptoms more pronounced. I guarantee you that the respondent in that hypothetical would be arguing that that June 10 incident was an intervening accident. But how did we shift into an intervening accident? Nobody argued that. You were arguing an aggravation of existing conditions. I'm just saying the findings are such that it's analogous to where that's, again, this could be a chain of offense argument. It could be a lot of things. But, I mean, to me it's a simple aggravation of a preexisting condition. And yet there's three doctors that say it wasn't, right? That's correct. I respectfully request that when you look at the record as a whole, that the decision isn't as manifest. I ask for a reversal. Thank you. Thank you, Counselor. You have time on the floor. You may respond, Counsel. Good afternoon, Your Honors. Mr. Schooley, Daniel Egan on behalf of the employer, Busky Lines. As I argued in my brief, this is a manifest way to the evidence case. Counsel's arguments have all been made before at the commission. They've been made in the circuit court. It doesn't matter so much if they were made in the circuit court, but they were made at the commission. And the commission, which is the jury and the judge in this case, came to the conclusions that they found the experts by employer more persuasive than the experts on employees' behalf. The decision, it's a close call. I agree it's a close call, and I understand Counsel's aggravation with the decision. But the decision is what it is. It's based upon evidence of record. It's based upon medical testimony. And the commission gave reasons supporting the bases for their decisions, as Justice Hudson pointed out. And for those reasons, we would ask that the commission decision be affirmed, not against the manifest way to the evidence. Thank you. Thank you, Counsel. Counsel, you may reply. No, there's no questions. I have no further questions. I don't believe there are. Thank you both, Counsel, for your arguments in this matter. We'll be taking them under advisement. This position shall issue.